**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| BRIAN KEITH ALFORD, | : | Case No. 2:24-cv-194 |
| | : | |
| Plaintiff, | : | District Judge Sarah D. Morrison |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| TOM SCHWEITZER, *et al*., | : | |
| | : | |
| Defendants. | : | |

---

## REPORT AND RECOMMENDATION

---

Plaintiff Brian Alford, who is proceeding without the assistance of counsel, is an inmate who is currently incarcerated at the Ross Correctional Institution (RCI). He brings this civil rights action to complain about issues that arose while he was incarcerated at Madison Correctional Institution (MaCI) from September 2021 to January 2022.

The Court notes that the claims asserted in this case are substantially the same as the claims asserted in *Alford v. Schweitzer, et al.,* No. 2:22-cv-1652 (S.D. Ohio). (*See* Doc. 2 at PageID 210 (acknowledging that this case "is being refiled")). This Court dismissed Case No. 2:22-cv-1652 because Plaintiff did not pay the filing fee and could not be granted *in forma pauperis* status, as he had previously accumulated "three strikes" under 28 U.S.C. § 1915(g) and failed to show imminent danger of serious physical injury. (*See* Case No. 2:22-cv-1652 (Doc. 5, at PageID 36-38; Doc. 14, at PageID 87-89)). The Court's dismissal did not bar Plaintiff from filing a substantially similar lawsuit accompanied by payment of the full filing fee. *Shabazz v. Campbell*, 12 F. App'x 329,

330 (6th Cir. 2001). Because Plaintiff has now paid the full filing fee, he is permitted to refile the dismissed claims asserted in Case No. 2:22-cv-1652.

This matter is before the undersigned Magistrate Judge to conduct the required initial screen of Plaintiff's Complaint (Doc. 1) under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915A(b). For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's claims be **DISMISSED**.

## I.    LEGAL STANDARDS

### A.    Requirement To Screen Plaintiff's Complaint

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners").

### B.    Determining That A Complaint Is Frivolous

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a

legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no

arguable factual basis when the allegations are delusional or rise to the level of being

irrational or 'wholly incredible.'" *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The

Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v.

Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible."

*Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009).

### C. Determining That A Complaint Fails To State A Claim Upon Which Relief May Be Granted

The Court is required to dismiss complaints that fail to state a claim upon which

relief may be granted. 28 U.S.C. § 1915A(b)(1). To avoid dismissal under this standard,

the complaint must set forth "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the

complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and

determine whether the complaint contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hill v.

Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the "dismissal standard

articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under

§§ 1915A(b)(1) and 1915(e)(20(B)(ii)"). Thus, the complaint must include factual

allegations that are both ***well-pleaded*** and ***plausible***.

Factual allegations are well-pleaded if they are specific and support the plaintiff's

claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept

"non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations … that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (internal quotations and citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678.

In addition, a "complaint must contain either direct or inferential allegations respecting all the material elements" of a claim "to sustain a recovery under *some* viable legal theory." *Columbia v. Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis in original).

### D.    Liberal Construction Of *Pro Se* Complaints

Plaintiff is representing himself *pro se* – that is, without the assistance of counsel. This Court is required to liberally construe a *pro se* complaint and hold it "to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in

order] to construe a *pro se* petition to encompass any allegation stating federal relief."

*Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must

adhere to the "basic pleading essentials" and the Court should not have to guess at the

nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead,

the complaint must "give the defendant fair notice of what the … claim is and the

grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## II.     PLAINTIFF'S FACTUAL ALLEGATIONS

The following statement of facts is taken from the Complaint (Doc. 1). As it is

required to do, the Court accepts as true all well-pleaded and plausible factual allegations

(but not legal allegations) in the Complaint for purposes of conducting its initial screen.

The events underlying Plaintiff's claims occurred while he was incarcerated at

MaCI. Plaintiff names ten MaCI employees as Defendants: Warden Schweitzer; Unit

Management Chief Cann; Inspector Gould; Unit Managers Brady and Crane;

Correctional Counselor Sergeant Miramontez;[1] and Correctional Officers Day, Tehan,

Young, and Wolford. Plaintiff is suing each Defendant in their official and individual

capacities. (Doc. 1 at PageID 1, 3).

On September 23, 2021, Plaintiff was transferred from the Toledo Correctional

Institution (ToCI) to MaCI—over his objections—after his security level was decreased.

---

[1] Defendant Miramontez's name is incorrectly listed on the case docket as "Montez." The Clerk of Court is **DIRECTED** to change this Defendant's name on the docket to Miramontez.

(Doc. 1 at PageID 3). Ten years ago, Plaintiff sued MaCI Warden Schweitzer in another federal lawsuit. (*Id.* (citing *Alford v. Mohr*, S.D. Ohio Case No. 1:15-cv-00645)). Plaintiff also allegedly learned that MaCI "had been plagued with serious problems involving inmate deaths and violations of numerous constitutional rights of prisoners." (*Id.*).

Plaintiff arrived at MaCI with two "2.4 [cubic feet]" boxes of his property. One box contained legal materials and the other box contained medically approved boots, medically approved gym shoes, and additional legal materials. (Doc. 1 at PageID 4). Although prison regulations limited Plaintiff to one box, Plaintiff had written authorization to have the extra box for legal materials. (*Id.*). When his property was processed at MaCI, Defendant Miramontez confiscated the medically approved boots pending Plaintiff's appeal to the ADA coordinator for an accommodation.[2] (*Id.*). Plaintiff was allowed to keep his medically approved gym shoes and two boxes of legal materials. (*Id.*).

In November 2021, Defendants Cann and Brady informed Plaintiff that the ADA Coordinator had not received his appeal and that he should resubmit it. (Doc. 1 at PageID 4). This information surprised Plaintiff because he had in his possession a signed receipt that acknowledged submission of the appeal. (*Id.*).

On November 18, 2021, Plaintiff took a random drug test that came back positive for THC. (Doc. 1 at PageID 4; Doc. 1-3 at PageID 161). Plaintiff alleges that the test

---

[2]An exhibit attached to the Complaint indicates that the Warden at ToCI denied Plaintiff's request for an accommodation for the boots, and Plaintiff appealed that decision to the ADA Coordinator prior to his transfer to MaCI. (*See* Doc. 1-1, at PageID 27).

results were invalid because he has "never smoked anything containing THC nor ever tested positive for any substance" during his 37 years in custody. (Doc. 1 at PageID 4). Plaintiff alleges that the test sample was likely contaminated, and should have been discarded, because Defendant Wolford dropped the sample cup. (*Id*.). Plaintiff contested the test result but Defendant Gould declined to review camera footage that would have shown the contamination. (*Id*. at PageID 5). Plaintiff was required to pay $25.00 for retesting. (*Id.* at PageID 4). In addition, his telephone, visiting and JPay tablet privileges were suspended. (Doc. 1-3 at PageID 153).

Plaintiff filed grievances against several Defendants to challenge MaCI's confiscation of his medically approved boots, the faulty drug test result, and the sanctions imposed because of the drug test result. (Doc. 1 at PageID 5). He also "continued litigious activity in court." (*Id.)*

During the week of December 15, 2021, Defendants Day, Tehan and Young conducted two cell searches that lost and damaged Plaintiff's property and dumped his legal mail on his cellmate's bunk, mixing it together. (Doc. 1 at PageID 5).

Plaintiff took another drug test on January 13, 2022. (Doc. 1 at PageID 5). The results came back positive for methamphetamine and suboxone "in spite of Plaintiff never engaging in drug usage[.]" (*Id*.). Although Plaintiff denied using drugs, the positive drug test results "disqualif[ied] [Plaintiff] for [Hepatitis-C] treatment and parole release in July 2022." (*Id*.). No additional sanctions were imposed.

On January 14, 2022, Plaintiff was advised that he would be transferred to RCI on January 19, 2022. (Doc. 1 at PageID 5). After being informed of the transfer, Warden

Schweitzer and another MaCI official brought Plaintiff to Defendant Miramontez's office in the Adams-D unit, where his boots were returned to him. (*Id*. at PageID 5-6).

On January 18, 2022, Plaintiff was sent to the Adams-D unit to pack before his transfer the next day. (Doc. 1 at PageID 6). Defendants Berry, Crane, Brady, Miramontez, and several unidentified officers were present while he packed. (*Id.*). Defendant Crane walked over to Plaintiff and yelled: "Hey, you are only allowed to take one (1) 2.4 box to [RCI], and your legal box is contraband and must be mailed home or destroyed." (*Id*.). Plaintiff responded as follows:

> I explained my legal box was authorized and contained active documents for trials in Case No. 2016-00038 on 2-23-22 and 2020-00574 on 4-14-22 in Court of Claims Ohio, as well as documents for current litigation in Case No. 3:21-cv-1123 and 21-3662 in Sixth Circuit Court of Appeals, and challenges to convictions in 1983 CR 02225 Montgomery County, and 3:00-cv-0065 in United States District Court.

(Doc. 1 at PageID 6). Nevertheless, Defendants Crane and Miramontez told Plaintiff to "mail the legal box home, destroy it, or get cuffed up!" (*Id*.). That same day, Plaintiff mailed the box to his father and was charged $74.90 in postage. (*Id*. at PageID 7; Doc. 1-2 at PageID 86). Plaintiff alleges that Defendants Cann, Schweitzer, Brady, and Gould "were put on notice of these violations yet attempted to shield" Defendants Crane and Miramontez.

On February 1, 3, 9, and 17, 2022, Plaintiff received pieces of mail that had been packed in the box sent to his father. (Doc. 1 at PageID 7). In his Complaint, Plaintiff states that the box never arrived at his father's house. (*Id*.) The attachments to his

Complaint, however, indicate that Plaintiff's box arrived at his father's house on either

February 10 or February 11, 2022, but was damaged. (Doc. 1-2 at PageID 86).

On February 2, 2022—and at RCI rather than MaCI—Plaintiff's mail was mixed

up with another inmate's mail. (Doc. 1 at PageID 8). The matter was resolved after

Plaintiff asked that the prison mailroom be notified of the error. (*Id.*).

## III.   PLAINTIFF'S CLAIMS

In his Complaint, Plaintiff alleges:

> This action is brought against Defendants individually and/or working in
> concert with one another, for retaliation against Plaintiff for exercise of his
> litigious activity—the filing of lawsuits—in order to deter Plaintiff from
> exercising his right to access the courts. . . . including, but not limited to,
> loss of property causing inability to file documents in upcoming trials, to
> challenge his convictions and conditions of confinement in case numbers
> *Alford v. ODRC*, 2016-00038, *Alford v. ODRC*, 2020-00574, both set for
> trials in 2-23-22 and 4-[illegible]-22 in Court of Claims Ohio; appeals in
> Case No. *Alford v. Zilles, et al.* 3:21-cv-1123, *Alford v. Chambers-Smith, et
> al.*, 21-3662 in United States Court of Appeals – Sixth Circuit, as well as
> continued challenges to his convictions in *State of Ohio v. Brian K. Alford*,
> 1983 CR 02225 and *United States v. Brian K. Alford*, 3:00-CR-0005.

(Doc. 1 at PageID 2).

Based on these and other factual allegations in the Complaint, Plaintiff asserts

claims for conspiracy under 42 U.S.C. §§ 1983 & 1985, [First Amendment] retaliation,

[First Amendment] denial of access to the courts, [Fourteenth Amendment] denial of due

process, [Eighth Amendment] cruel and unusual punishment, and [Eighth Amendment]

deliberate indifference to medical needs. (*Id.* at PageID 2-3, 7). Plaintiff asserts his

constitutional claims pursuant to 42 U.S.C. § 1983, which authorizes a cause of action

"against any person who, under color of state law, 'subjects, or causes to be subjected,

any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

Plaintiff seeks declaratory and injunctive relief, nominal and compensatory damages, and punitive damages exceeding $1,000,000 against each Defendant. (Doc. 1 at PageID 9-10).

## IV.     LAW AND ANALYSIS

For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's claims be dismissed.

### A.     Plaintiff's Requests For Declaratory And Injunctive Relief Are Moot

As an initial matter, because Plaintiff is no longer incarcerated at MaCI, his requests for declaratory and injunctive relief (but not for damages) are moot.

With respect to Plaintiff's requests for declaratory relief, the relevant legal test is "whether the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Maryland Cas. Co. v. Pacific Co.*, 312 U.S. 270, 273 (1941) (emphasis omitted)). The plaintiffs in *Preiser* were prison inmates who challenged their transfer to a maximum-security prison without first being given due process (i.e., notice and the

opportunity to be heard). By the time the case had reached the Supreme Court, only one plaintiff (Newkirk) remained incarcerated—and he had since been transferred to a minimum-security institution. The Court held that Newkirk's transfer to a minimum-security prison mooted his request for a declaration that defendants had denied him due process in connection with his earlier transfer, because there was no longer an Article III "case or controversy" to be decided. *Id*. at 401-02.

Applying *Preiser* here, the undersigned concludes that Plaintiff's transfer from MaCI to RCI mooted his requests for declaratory relief. Because Plaintiff is no longer in the custody of MaCI, his complaints about the events that occurred at MaCI are not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser*, 422 U.S. at 402. No facts in the Complaint suggest that an exception to the mootness doctrine might apply. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (collateral consequences exception); *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (capable of repetition yet evading review exception); *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953) (voluntary cessation exception).

The same logic applies to Plaintiff's requests for injunctive relief "to prevent further retaliatory acts by Defendants." (Doc. 1 at PageID 9.) Because he is no longer incarcerated at MaCI, Plaintiff's requests for temporary, preliminary, and permanent injunctive relief against the ten individual MaCI Defendants are moot. *See Sossamon v. Texas*, 563 U.S. 277, 304 (2011) ("A number of RLUIPA suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits.").

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's requests for declaratory and injunctive relief with respect to all of his claims be **DENIED AS MOOT**.

### B. Plaintiff's Official Capacity Claims For Damages Are Barred

Plaintiff has sued all of the Defendants in their official and individual capacities. (Doc. 1 at PageID 1). However, the Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages. Because, as noted above, Plaintiff also cannot recover declaratory or injunctive relief against Defendants in their official capacities (since those requests for relief are moot), Plaintiff's official capacity claims should be dismissed with prejudice.

Absent an express waiver, states are immune from lawsuits seeking damages under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). Therefore, if Plaintiff had sued the State of Ohio, his claims would be barred by the Eleventh Amendment.

Plaintiff cannot avoid this result by suing officials and employees of the State of Ohio. The Eleventh Amendment bar extends to actions where the State is not named as a defendant, but the actions essentially seek to recovery of money from the State. *Edelman*, 415 U.S. at 663.  It is well-established that a claim against an individual defendant in his official capacity is actually a claim against the entity that employs him. *Kentucky v.*

*Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent …. [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotations and citations omitted). Therefore, actions against State officials in their official capacities for money damages are barred by the Eleventh Amendment. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)). This doctrine applies squarely here.

In sum, the Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages. And because Plaintiff's requests for declaratory and injunctive relief are moot, Plaintiff cannot recover <u>any</u> relief in connection with his official capacity claims. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's official capacity claims be **DISMISSED WITH PREJUDICE.**

Next, the Court will analyze Plaintiff's substantive claims to the extent that they seek to recover monetary damages (not declaratory or injunctive relief) from Defendants in their individual capacities (not their official capacities).

### C.    Plaintiff's First Amendment Retaliation Claims Fail To State A Claim Upon Which Relief Can Be Granted

In his Complaint, Plaintiff alleges that MaCI personnel retaliated against him by: (1) confiscating his medically approved boots pending an ADA appeal; (2) administering two drug tests that were positive for drug use (falsely, he claims); (3) failing to

13

adequately investigate his complaint that the first drug test was invalid due to contamination; (4) suspending his privileges (telephone, visiting and JPay tablet) after he failed the first drug test; (5) charging him $25 for another drug test after he failed the first drug test; (6) disqualifying him for hepatitis-C treatment after he failed the second drug test; (7) disqualifying him for parole consideration after he failed the second drug test; (8) conducting two cell searches that lost or damaged his property, including dumping out and mixing up his legal papers; (9) requiring him to choose between mailing his second box of legal papers to his father, or having it be destroyed; and (10) mixing up his legal mail with another inmate's legal mail (although Plaintiff was no longer incarcerated at MaCI when this alleged event occurred). (Doc. 1 at PageID 1-8.)

The Court understands Plaintiff to be claiming that when Defendants engaged in the conduct alleged in the Complaint, they did so to retaliate against him for his "litigious activity" and for his filing of various unspecified grievances. (Doc. 1 at PageID 2, 5). The undersigned recommends that Plaintiff's First Amendment retaliation claims be dismissed without prejudice for failure to state a claim upon which relief can be granted.

A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). This claim requires the plaintiff to plead that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that "would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct"; and (3) the plaintiff's protected conduct motivated, at least in part, the defendant's adverse action. *Id*. at 394.

As to the first element, conduct that is protected under the First Amendment is not limited to formal grievances or petitions. Informal complaints can qualify as protected First Amendment conduct, but only if they are not frivolous. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018). Similarly, grievances can constitute protected conduct but "only to the extent that the underlying claims ha[ve] merit." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

As to the second element, an action is only "adverse" for purposes of a First Amendment retaliation claim if it "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (citation omitted). Whether a particular action is adverse "is not static across contexts." *Id*. at 398. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action . . . is considered adverse." *Id*. Certain actions may be "so de minimis that they do not rise to the level of being constitutional violations." *Id*.; *accord Maben*, 887 F.3d at 266. Moreover, "enforcing prison rules against an inmate is not an adverse action." *Brown v. Johnson*, No. 2:10-cv-965, 2013 U.S. Dist. LEXIS 110389, *13 (S.D. Ohio Aug. 6, 2013) (Kemp, M.J.), *report and recommendation adopted at* 2014 U.S. Dist. LEXIS 40389 (S.D. Ohio Mar. 25, 2014) (Sargus, D.J.).

Finally, as to the third element, the plaintiff bears the initial burden of establishing that the defendant acted with a retaliatory motive. *Maben*, 887 F.3d at 262. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state … a claim under Section 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted). If the plaintiff meets this initial burden, then the defendant must

15

show that he would have taken the same action absent the protected activity. *Maben*, 887 F.3d at 262. Close temporal proximity between the protected activity and an adverse action may be sufficient to create an inference that the defendant's motive in taking the adverse action was retaliatory. *Id.* at 268. But "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Id.* (internal quotations and citation omitted).

The undersigned concludes that Plaintiff has failed to plead the second and third elements of a plausible First Amendment retaliation claim.

As to the second element (defendant took an adverse action), the alleged facts do not support a reasonable inference that the complained-of actions rose to the level of "'deter[ring] a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. In the prison context, adverse actions include continual harassment, physical threats, placement in unhealthy living conditions, and placement in administrative segregation. *Id.* at 398-99. Lesser deprivations are not considered to be adverse. *Mulazim v. Corrigan*, 7 F. App'x 427, 431 (6th Cir. 2001) (no adverse action where prisoner alleged that he was improperly transferred to another cell, assigned a top bunk despite his physical ailments, and housed with a cigarette smoker, and where defendants allegedly seized and failed to return several items of personal property). Plaintiff's allegations here—that his papers were mixed up, that he was given drug tests and sanctioned for failing them, that his mail was temporarily mis-handled, etc.—do not rise to the level required. In addition, to the extent that Defendants took these actions to

16

enforce prison rules, they do not constitute adverse actions for purposes of a First Amendment retaliation claim. *Brown*, 2013 U.S. Dist. LEXIS 110389, *13.

As to the third element, which requires "a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct," *Thaddeus-X*, 175 F.3d at 394, Plaintiff has alleged "no facts, no evidence, other than timing, to support his claim of retaliation." *Goddard v. Kentucky Dep't of Corr.*, Nos. 99-5348/99-5971, 2000 U.S. App. LEXIS 1912 (6th Cir. Feb. 7, 2000). And here, the timing does not support a plausible claim that Defendants' actions were retaliatory.

According to the Complaint, Plaintiff's boots were confiscated when he arrived at MaCI—***before*** he engaged in any protected conduct—which defeats causation. *Pryor v. Chambers-Smith*, No. 24-3301, 2025 U.S. App. LEXIS 7792, *10 (6th Cir. Apr. 2, 2025). The cell searches in December 2022 and the second drug screen in January 2023 closely followed, and are a logical consequence of, the positive drug screen in November 2022. (Doc. 1 at PageID 4-5; Doc. 1-3 at PageID 161). *See Vercheres v. Wilkinson*, No. 98-3702, 1999 U.S. App. LEXIS 24349, *3 (6th Cir. Sept. 28, 1999) ("Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."). Plaintiff himself alleges that Defendants imposed certain sanctions because of the failed drug tests. And there is no apparent connection between Plaintiff's earlier grievances and litigious activity and

17

Defendants' directive, shortly before his transfer, to choose between mailing one box of his legal papers to his father or having it be destroyed.

In sum, the allegations pled in the Complaint do not state a plausible claim that Plaintiff's protected conduct caused Defendants to retaliate against him by taking adverse actions in violation of the First Amendment. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

### D.   Plaintiff's First Amendment Access-To-Courts Claims Fail To State A Claim Upon Which Relief Can Be Granted

Plaintiff alleges that when certain Defendants required him to mail one box of legal papers to his father, they unconstitutionally deprived him of his right of access to the courts in violation of the First Amendment to the United States Constitution. The undersigned recommends that Plaintiff's First Amendment access-to-courts claims be dismissed without prejudice for failure to state a claim upon which relief can be granted.

"It is well-settled that prisoners possess a constitutional right of access to the courts." *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983) (citing *Bounds v. Smith*, 430 U.S. 817 (1977). "Prison officials are charged with the responsibility of assuring that inmate access to the courts is 'adequate, effective and meaningful.'" *Id*. (citing *Bounds*). If inmates are denied their right of access to the courts, they may be able to prevail on a claim under the First Amendment.

To state such a claim, however, the plaintiff must identify the underlying lawsuit—that is, the action that he was allegedly prevented from having access to—and

18

describe how his interests in that lawsuit were adversely affected by the alleged denial of access. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The plaintiff must also identify an actual injury and official conduct that amounts to more than mere negligence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578; *see also Lewis v. Casey*, 518 U.S. 343 (1996).

In addition, the plaintiff must plead that the underlying lawsuit that was adversely affected had at least one non-frivolous claim. *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("[O]nly prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action."); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)); *see also Taylor v. Tornichio*, No. 3:22-cv-56, 2022 U.S. Dist. LEXIS 91769, *14 (S.D. Ohio May 23, 2022) (citing *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)).

The allegations in the Complaint do not satisfy these pleading requirements. Plaintiff did not allege that he suffered any actual injury—such as missing a deadline or dismissal of a case—because he was forced to mail a box of legal materials involving several pending cases to his father. Although he identified his cases, he did not say *how* they were adversely affected by his loss of the box. Nor did he allege that the lawsuit(s) or intended filings asserted one or more non-frivolous claims. Without such allegations, Plaintiff's access-to-courts claims cannot proceed past the screening stage. *See Grigsby v.*

*Collins*, No. 3:10-cv-2204, 2011 WL 198016, at *2 (N.D. Ohio Jan. 18, 2011)
(dismissing prisoner's access-to-courts claim that he was forced to mail home, donate, or
destroy legal materials in excess of his 2.4 cubic foot box where he failed to assert any
actual injury).

   Accordingly, the undersigned **RECOMMENDS** that Plaintiff's First Amendment
access-to-courts claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a
claim upon which relief can be granted.

   **E.    Plaintiff's Conspiracy Claims Fail To State A Claim Upon Which
           Relief Can Be Granted**

   The undersigned construes the Complaint as asserting conspiracy claims against
all Defendants under Sections 1983 and 1985. (Doc. 1 at PageID 1-3.)

   "A civil conspiracy [under Section 1983] is an agreement between two or more
persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854
(6th Cir. 2003). A plaintiff must plead and prove "a single plan, that the alleged
coconspirator shared in the general conspiratorial objective, and that an overt act was
committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks
v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *see also Bazzi v. City of Dearborn*, 658
F.3d 598, 602 (6th Cir. 2011). In addition, "conspiracy claims must be pled with some
degree of specificity . . . [V]ague and conclusory allegations unsupported by material
facts will not be sufficient to state such a claim under Section 1983." *Fieger v. Cox*, 524
F.3d 770, 776 (6th Cir. 2008); *see also Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir.
2019) ("The plaintiff must plead enough facts to support a reasonable inference that there

was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."); *Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"); *Dean v. Brandon*, No. 97-6201, 1998 WL 552683, at *2 (6th Cir. Aug. 13, 1998) ("[The appellant's] conspiracy claim was simply too conclusory and speculative to state a claim under Section 1983 and Section 1985.").

Plaintiff also asserts conspiracy claims under 42 U.S.C. § 1985, which authorizes certain claims challenging conspiracies to violate civil rights. To establish a claim under Section 1985(3),[3] a plaintiff must plead and prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). Further, Plaintiff must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992). Plaintiff's factual allegations in

---

[3] Section 1985(1) prohibits conspiracies to prevent officers of the United States from accepting office, holding office, or discharging their public duties. Section 1985(2) prohibits conspiracies to obstruct justice or intimidate a party, witness or juror in a United States court proceeding. Neither provision plausibly applies in this case.

support of this claim "must be pled with some degree of specificity" and cannot be vague or conclusory. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

Here, Plaintiff makes a conclusory *allegation*, without supporting *facts*, that Defendants engaged in a conspiracy. Plaintiff alleged no facts that show Defendants shared a conspiratorial objective or planned together to deprive him of a constitutionally protected right. No plausible or well-pleaded facts in the Complaint suggest that Defendants acted in a coordinated manner to injure Plaintiff in accordance with a single plan and a shared conspiratorial objective. Nor, for purposes of Plaintiff's Section 1985 claim, are there allegations that Defendants acted with a class-based discriminatory animus to deprive Plaintiff of the equal protection of the laws.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's conspiracy claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

### F. Plaintiff's Procedural Due Process Claims Fail To State A Claim Upon Which Relief Can Be Granted

Plaintiff mentions the denial of due process in his Complaint but does not develop the claim. (*See* Doc. 1 at PageID 2.) Liberally construing his Complaint, the undersigned has attempted to consider the most relevant allegations in the context of a procedural due process claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'")

(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Even liberally construed, there is insufficient factual material or information in the Complaint to plausibly suggest that Defendants deprived Plaintiff of his constitutional right to due process.

The Due Process Clause in the Fourteenth Amendment to the United States Constitution provides that no State "shall … deprive any person of life, liberty, or property, without due process of law." The purpose of this Clause is to protect individuals against arbitrary government action. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

> The Supreme Court has provided two steps for analyzing procedural due process claims: (1) whether there exists a liberty or property interest which has been interfered with by the State and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient.

*Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (cleaned up).

A plaintiff must first identify a "protected interest" in his Complaint in order to proceed. *See Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006) ("A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest . . .") (citing *Thompson*, 490 U.S. at 460). Here, Plaintiff has not clearly identified a protected liberty or property interest in the Complaint. This failure alone justifies dismissal of his due process claims.

Under a liberal construction of the Complaint, the undersigned surmises that Plaintiff may be referring to the boots that were confiscated while he was at MaCI and/or the box of legal documents he was required to send to his father. (Doc. 1 at PageID 2, 4.)

23

In addition to the fact that Plaintiff has not pled a constitutionally protected interest in either the boots or the box, these due process claims fail for other reasons.

"While the Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers, if satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *McKinney v. Paddock*, No. 2:20-cv-1450, 2024 WL 383412, at *20 (S.D. Ohio Feb. 1, 2024), *report and recommendation adopted*, 2024 WL 1193074 (S.D. Ohio Mar. 20, 2024) (cleaned up).

With respect to the confiscation of Plaintiff's "medically approved" boots, Plaintiff filed one or more appeals.[4] (Doc. 1 at PageID 4.) The boots were returned to Plaintiff before he was transferred out of MaCI. (*Compare* Doc. 1 at PageID 3 [boots taken September 23, 2021] *with* PageID 5-6 [boots returned January 14, 2022].) Plaintiff does not allege that the confiscation of his boots caused him to suffer pain or discomfort, likely because he was able to wear "medically approved" gym shoes. (Doc. 1 at PageID 4.) Because the boots were taken for a relatively short time and returned, and because Plaintiff has not challenged the sufficiency of the appeals process or alleged that he was injured, the undersigned concludes that the temporary deprivation of his boots represents the kind of *de minimus* injury that does not offend the Constitution or support a Section 1983 claim. *See, e.g., Erdman v. Granholm*, No. 1:07-cv-10, 2007 WL 757894, at *7

---

[4] Plaintiff refers to an "ADA Appeal" and "Classification Appeal" but does not describe them.

(W.D. Mich. Mar. 8, 2007) ("Courts have long recognized that *de minimus* property interests do not trigger procedural due process protections").

The situation with Plaintiff's box is slightly different but leads to the same result. An Ohio regulation limits prisoners to one 2.4 cubic-foot box with certain exceptions:

> In Ohio, prisoners may not possess more than 2.4 cubic feet of combined state and personal property, excluding bedding, coats, jackets, permitted shoes, and large items such as televisions. Ohio Admin. Code § 5120–9–33(B). An inmate's legal property is also subject to this storage space restriction. *Id.*

*Grigsby v. Collins*, No. 3:10-cv-2204, 2011 WL 198016, at *1 (N.D. Ohio Jan. 18, 2011). Because some prisons enforce this regulation more strictly than others, it may suddenly become an issue when a prisoner is transferred to a new prison. *See id.* ("Although Mr. Grigsby had been given permission for additional storage for legal property at LCI, he was not permitted to retain all of his materials when he arrived at ACI.").

To plead a procedural due process claim, Plaintiff must plead facts that show that Defendants deprived him of a protected property interest. With respect to the box that Plaintiff was forced to mail to his father, Plaintiff arguably did not plead such facts because he retained ownership, although not possession, of the box. *See, e.g., Pearce v. Sapp*, No. 97-6373, 1999 U.S. App. LEXIS 16225, *6 (6th Cir. July 9, 1999) ("The seizure of Pearce's addresses was not an unconstitutional taking of property because Pearce retained ownership of the list and was able to mail it to his sister.") As the United States District Court for the Northern District of Ohio held in a similar case:

> The amended complaint indicates [the plaintiff] retained ownership of the property he was required to remove from his cell and was able to mail it out of the institution. The fact that he was not able to store it in the location he

25

> desired does not necessarily amount to a deprivation of property for Fourteenth Amendment purposes. *See Pearce v. Sapp,* No. 97-6373, 1999 WL 503568 at \*2 (6th Cir. July 9,1999).

*Clark v. Johnston*, No. 4:07-cv-941, 2007 U.S. Dist. LEXIS 50489, \*8 (N.D. Ohio July 12, 2007). Under this line of cases, Defendants did not deprive Plaintiff of his property interest in the box, and he has therefore failed to state a procedural due process claim.

Moreover, even if Plaintiff had pled that Defendants deprived him of a property interest in the box, his procedural due process claim would still fail because he has not pled that his post-deprivation remedies were inadequate. In cases involving random and unauthorized deprivations of property—which appears to be what Plaintiff alleges here— the plaintiff must also plead that no post-deprivation state or administrative remedies are adequate to remedy the injury. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Mitchell v. Fankhauser*, 375 F.3d 477, 482 (6th Cir. 2004). Plaintiff included no such allegations in the Complaint.

For all of these reasons, the undersigned **RECOMMENDS** that Plaintiff's procedural due process claims, if these are the claims he is raising, be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

### G. Plaintiff's Eighth Amendment Deliberate-Indifference-To-Medical-Needs Claims Fail To State A Claim Upon Which Relief Can Be Granted

Plaintiff vaguely alleges that he was deprived of treatment for hepatitis-C as a punishment for failing the second drug test. He provides no details about that allegation. The undersigned concludes that Plaintiff has failed to state a claim upon which relief can be granted.

The Government is "obligated to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward" an inmate's "serious medical needs." *Reilly v. Valdamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (citations omitted). But a prison official may only be held liable for denying medical care if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). This claim therefore "contains both an objective component—a 'sufficiently serious medical need'—and a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citations omitted).

Here, Plaintiff has not alleged facts that plausibly suggest any Defendant was deliberately indifferent to his medical needs. He provides no facts about the alleged deprivation of treatment for hepatitis-C, including what treatment was discontinued, by whom, for how long, and how his health was affected. He also has not alleged any facts that would show or support a reasonable inference that one or more Defendants acted with a sufficiently culpable state of mind.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Eighth Amendment deliberate-indifference-to-medical-need claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

**H.      Plaintiff's Eighth Amendment Conditions-Of-Confinement Claims Fail To State A Claim Upon Which Relief Can Be Granted**

As discussed above, Plaintiff is complaining about several conditions of confinement at MaCI. Because none of these conditions rises to the level of an actionable harm under the Eighth Amendment, Plaintiff has failed to state a claim upon which relief can be granted.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, "extreme deprivations are required to make out a conditions-of-confinement claim … [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (citation omitted). Therefore, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 455-56 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

An Eighth Amendment conditions-of-confinement claim includes both objective and subjective components. The objective component requires the plaintiff to show that the alleged harm was "objectively, sufficiently serious" and denied him "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and

citation omitted). Otherwise stated, the plaintiff must allege facts that establish an objectively intolerable risk of serious harm. *Id*. at 842, 846 & n.9. The subjective component requires the plaintiff to plead and prove that the defendants "acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455.

None of the conditions that Plaintiff identifies—suspension of telephone, visitation and JPay tablet privileges, deprivation of his boots and box of legal materials, searches of his cell, and administration of faulty drug tests—constitute an extreme deprivation that gives rise to an Eighth Amendment violation. Plaintiff's allegations do not satisfy the required objective and subjective components of an Eighth Amendment claim.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Eighth Amendment conditions-of-confinement claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

## I.    Plaintiff's State-Law Claims Should Be Dismissed With Prejudice.

Finally, Plaintiff's claims under Ohio Rev. Code § 2921.45 (*see* Doc. 1 at PageID 1) should be dismissed with prejudice. Although Section 2921.45(A) provides that "[n]o public servant . . . shall knowingly deprive, or conspire to attempt to deprive any person of a constitutional or statutory right," this Ohio statute is a criminal law. Ohio Rev. Code § 2921.45(B) ("Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree."). It does not provide a private cause of action at all, much less in federal court. *See Stewart v. Kahn*, No. 5:20-cv-2818, 2021 WL 2720618, at *3 (N.D. Ohio July 1, 2021) ("Section 1921.45 is a state criminal statute that . . . does not

29

provide for a private civil cause of action."); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 972 (W.D. Mich. 2018), <u>aff'd</u>, 768 F. App'x 495 (6th Cir. 2019) ("to the extent Mr. Rayfield seeks relief for alleged purported violations of state law, § 1983 does not provide a remedy.")

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's state-law claims be **DISMISSED WITH PREJUDICE.**

## V.     CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that:

1.  Plaintiff's requests for declaratory and injunctive relief with respect to all of his claims be **DENIED AS MOOT**;

2.  Plaintiff's official capacity claims and state-law claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted;

3.  All remaining claims in Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted; and

4.  The District Judge **CERTIFY** that an appeal of an order adopting this Report and Recommendations would not be taken in good faith and accordingly **DENY** Plaintiff leave to appeal *in forma pauperis*. See 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

The undersigned further **DIRECTS** the <u>Clerk of Court</u> to correct Defendant Miramontez's name on the docket, where it is incorrectly listed as "Montez."

**IT IS SO RECOMMENDED.**

April 25, 2025                              *Caroline H. Gentry*
Date                                       Caroline H. Gentry
                                           UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS:

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

31